IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JERMAINE LEVELL WILSON                                                    PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 1:22-cv-00231-RPM

SHERIFF DAVID ALLISON, *et al*.                                        DEFENDANTS

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Jermaine Levell Wilson, proceeding *pro se* and *in forma pauperis*, filed this civil action under 42 U.S.C. § 1983. [1] at 3. Wilson names Sheriff David Allison and Officer Patrick Johns as Defendants. *Id*. at 2; [41] at 1. After an Omnibus Hearing,[1] Sheriff Allison filed a Motion [47] for Summary Judgment for Failure to Exhaust Administrative Remedies, and Officer Johns filed a Motion [49] for Summary Judgment. Wilson did not respond to either. For the following reasons, the Court finds that Sheriff Allison's Motion [47] for Summary Judgment for Failure to Exhaust Administrative Remedies should be granted and that Wilson's claims against Sheriff Allison should be dismissed without prejudice. The Court finds that Officer Johns' Motion [49] for Summary Judgment should be granted in part and denied in part as discussed below. The Court having dismissed all claims against all parties, this case should be closed.

### I.    BACKGROUND

The events giving rise to this lawsuit occurred when Wilson was a pretrial detainee housed at the Pearl River County Jail ("PRCJ") in Poplarville, Mississippi. [1] at 2, 4. Wilson has since been convicted of armed robbery and sentenced by the Pearl River County Circuit Court to serve

---

[1] The Court held an Omnibus Hearing on March 14, 2023, to give Wilson a chance to clarify his claims. *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a "more definite statement"), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989). Citations to the Omnibus Hearing transcript are denoted "(Tr.)," and it is labeled Document 44 on the Court's docket.

ten years in the custody of the Mississippi Department of Corrections. *See* Inmate Details, Jermaine Wilson, https://www.ms.gov/mdoc/inmate/Search/GetDetails/242918 (last accessed Oct. 27, 2023).[2] He is currently housed at the South Mississippi Correctional Institution in Leakesville, Mississippi. *Id*.

### A. Wilson's Allegations

At the Omnibus Hearing, Wilson characterized himself as someone who "often ha[s] fights with other inmates." (Tr. 30). On or about February 1, 2022, when the events giving rise to this lawsuit occurred, Wilson admittedly fought with two other inmates and had a physical altercation with Officer Johns—as described below. *See id*. at 30, 46-47.

On the morning of February 1, Wilson avers that he and another inmate "start[ed] fighting." *Id*. at 9. Several officers immediately responded and told them to stop. *Id*. Wilson claims that he stopped at that time, *id*., but Officer Johns still punched him so hard that it knocked him out and he defecated on himself, [1] at 5. Officer Johns then "put his knee in [Wilson's] neck," and his head was "busted open . . . so badly that [he] needed stitches." *Id*. Wilson is "pretty sure" that Officer Johns handcuffed him at that time. (Tr. 15). After the initial altercation, Wilson claims that Officer Johns "dragged [him] to a hallway," where "he hit [Wilson] again." *Id*. at 14-15. Wilson claims that "Nurse Ashley" subsequently denied him medical care for the injuries imposed by Officer Johns.[3] *Id*. at 17, 42.

Wilson claims that he told his court-appointed lawyers about this issue, but Officer Johns

---

[2] The Court "may take judicial notice of matters of public record." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

[3] Wilson did not name Nurse Ashley in his Complaint, nor has he pursued a denial-of-medical-care claim. At the Omnibus Hearing, the Court established a deadline for Wilson to amend his Complaint to include more claims and defendants, if he so desired. (Tr. 49). No such motion to amend was filed—timely or otherwise.

warned him not to pursue it or he "would end up dead." [1] at 8. Because of this and other threats, Wilson requested that the Court remove him from PRCJ. *Id*. at 5. This request is now moot because Wilson is no longer housed there. *See Cooper v. Sheriff, Lubbock Cnty.*, 929 F.2d 1078, 1084 (5th Cir. 1991). For his remaining request, Wilson seeks $250,000.00 in monetary damages, plus proper medical care. [1] at 5.

Wilson alleges that his claims arise under the Eighth, Twelfth, and Fourteenth Amendments. *Id*. at 3. At the Omnibus Hearing, Wilson specified that he is suing Sheriff Allison in his "official capacity" for hiring and employing Officer Johns. *Id*. at 4; Resp. [12] at 1; (Tr. 19). He is suing Officer Johns for two incidents of excessive force—one in the common room and another in the hallway. [1] at 4; (Tr. 18).

### B. Summary-Judgment Evidence

Officer Johns submitted video footage of the incident described in Plaintiff's Complaint as an exhibit to his summary-judgment motion. *See* [49-3]. The footage depicts a large, common room housing several bunk beds and multiple inmates. At the beginning of the video (timestamped January 31, 2022, at 11:27 a.m.), several inmates are shown sitting or laying on their beds. The atmosphere was calm, and no disturbance was afoot.

Wilson entered the room at 11:31 a.m. Within five seconds, Wilson approached a resting inmate and punched him in the face. The two scuffled for a few minutes, and Wilson threw more punches, until other inmates intervened. At that point, the first physical conflict dissipated without official intervention—though Officer Johns did appear in the threshold of the doorway. The footage is clear, however, that Wilson continued to bicker with other inmates (and one in particular) over the next several minutes.

At 11:36 a.m., Wilson punched the other inmate with whom he had been arguing. The two fought for mere seconds before Officer Johns struck Wilson, who fell to the floor, and subdued him. It appears that Officer Johns placed his knee on Wilson's back while other officers cleared the rest of the inmates from the surrounding area. Once the area was cleared, Wilson got up and walked to the hallway without assistance.

Officer Johns also submitted as evidence the video footage of the events subsequently occurring in the hallway. Wilson entered the hallway handcuffed and escorted by Officer Johns. It appears that Wilson turned to speak to Officer Johns, who claims that Wilson "tried to spit on [him]" at this point. Mem. [50] at 8. In response, Officer Johns struck Wilson twice more. Officials at PRCJ determined that Officer Johns had used "unnecessary . . . force," and he "was terminated" as a result of this incident. [49-8] at 3. At that time, Officer Johns was advised "that [he] [cannot] hit an inmate in handcuff[s] and especially when the inmate has complied." *Id*.

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

To prevail on a motion for summary judgment, the movant must "demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law." *Murshid v. King*, No. 3:20-cv-00129-RPM, 2022 WL 4102782, at *1 (S.D. Miss. Aug. 22, 2022). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with 'significant probative' evidence." *Id.* (quoting *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

### III.    DISCUSSION

#### A.  Exhaustion of Administrative Remedies

Wilson's Complaint should be dismissed without prejudice as to all claims and all Defendants based on his failure to fully exhaust administrative remedies before filing this lawsuit. "Since exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010).

Exhaustion of administrative remedies through the prison grievance system is a prerequisite for lawsuits filed under § 1983. *Wright v. Hollingworth,* 260 F.3d 357, 358 (5th Cir.

2001); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available have been exhausted."). The Fifth Circuit Court of Appeals takes a "strict approach" to the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008). "Exhaustion is mandatory for 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). Dismissal is appropriate where an inmate has failed to properly exhaust the applicable administrative grievance procedure before filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83-84. "Merely initiating the grievance process or putting prison officials on notice of a complaint is insufficient to meet the exhaustion requirement." *Murshid*, 2022 WL 4102782, at \*2. "The grievance process must be carried through to its conclusion before suit can be filed under the Prison Litigation Reform Act." *Id.* (citing *Wright*, 260 F.3d at 358). A properly exhausted claim is one that has "complete[d] the administrative review process in accordance with the applicable procedural rules." *Woodford*, 548 U.S. at 88. Those rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

PRCJ's Inmate Handbook contains a grievance procedure through which inmates can

report a "complaint . . . [of] misconduct by a Correctional Officer." [49-6] at 15. This four-step

process was "instituted so that all grievances can be resolved in a timely and orderly fashion." *Id*.

If informal conflict resolution fails, inmates are first instructed to "submit a grievance form to the

Shift supervisor within 72 hours of the incident" and expect to receive a response within five

business days. *Id*. If they are dissatisfied with that response, inmates are instructed to "appeal the

decision to the grievance committee." *Id*. If they remain dissatisfied with the decision of the

grievance committee, inmates are instructed to "appeal to the Lieutenant." *Id*. If they are still

dissatisfied with the Lieutenant's decision, the inmates are finally instructed to "appeal to the Jail

Administrator or his/her designee." *Id*.

On February 25, 2021, Wilson signed a form "acknowledg[ing] by [his] signature that [he]

had] received the inmate handbook." [49-5] at 1. At the Omnibus Hearing, Wilson confirmed that

he was "aware of [the grievance procedure] because [he] submitted a grievance form" about this

incident. (Tr. 37). Specifically, Wilson says that he submitted one grievance to Major Flowers on

February 3, 2022, claiming that Officer Johns "violated [his] constitutional rights by assaulting

[him]." [47-1] at 1; *see also* (Tr. 37).

But Wilson failed to properly exhaust his administrative remedies against either Defendant.

Sheriff Allison was not mentioned in the one grievance that Wilson filed, nor does that grievance

outline Wilson's allegations against him—namely, for hiring and employing Officer Johns. *See*

[1] at 4; Resp. [12] at 1; (Tr. 19). "The Fifth Circuit has held that grievances should provide prison

officials fair notice of an inmate's specific complaints and the 'time and opportunity to address

[the] complaints internally.'" *Smith v. Green*, No. 5:18-cv-00086-DCB-MTP, 2019 WL 8108359,

at *2 (S.D. Miss. Sept. 25, 2019) (quoting *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004)),

*report and recommendation adopted by* 2020 WL 58671, at \*2 (S.D. Miss. Jan. 6, 2020). Thus, Wilson's sole grievance would not have provided Sheriff Allison the requisite notice of specific complaints against him.

Wilson's sole grievance likely does provide proper notice of his claims against Officer Johns, but Wilson failed to *fully* exhaust his administrative remedies against Officer Johns. That is, assuming without deciding that Wilson properly filed a first-step grievance, Wilson did not appeal his grievance to the grievance committee, the Lieutenant, or the Jail Administrator—as required by the PRCJ Inmate Handbook. *See* (Tr. 37-38); [49-6] at 15. By arguably completing only one step of the four required, Wilson has failed to fully exhaust his administrative remedies against Officer Johns. *E.g.*, *Perkins v. Arnold*, No. 1:17-cv-00171-RHW, 2019 WL 1601378, at \*3 (S.D. Miss. Apr. 15, 2019) (holding that a plaintiff failed to fully exhaust his administrative remedies where he filed a first-step grievance but two steps were required). Nor does it matter that Wilson allegedly received no response to his first-step grievance. (Tr. 37). "[T]he failure of prison officials to respond to a grievance does not constitute a valid excuse for failure to exhaust administrative remedies." *Corring v. Epps*, No. 2:13-cv-00029-KS-MTP, 2013 WL 6199581, at \*4 (S.D. Miss. Nov. 27, 2013) (quotation omitted).

Having failed to fully and properly exhaust his administrative remedies against either Defendant, all of Wilson's claims against them must be dismissed without prejudice.

### B.  Qualified Immunity

As a threshold matter, Officer Johns suggests that no discussion of qualified immunity is necessary because "Wilson never pled a claim against Officer Johns individually." Mem. [50] at 19. It is true that Wilson marked "official capacity" when listing Officer Johns as a Defendant in

his Complaint. [1] at 2. But *pro se* litigants are afforded lenience in the construction of their

pleadings, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and testimony given at an Omnibus

Hearing is "incorporated into the pleadings," *Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996).

Based on Wilson's testimony at the Omnibus Hearing, the Court finds that he intended to bring an

individual-capacity claim against Officer Johns based on his alleged use of excessive force.[4] The

Court will thus construe Wilson's claims against Officer Johns as individual-capacity claims.

"[G]overnment officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). To overcome the defense of qualified immunity, a plaintiff must "first allege

a violation of a clearly established constitutional right," and then "must . . . allege facts showing

that the defendant's conduct was objectively unreasonable in light of the law established at the

time of the incident." *Carpenter v. Itawamba Co. Jail*, 597 F. Supp. 3d 977, 991 (N.D. Miss. 2022)

(citing *Heitschmidt v. City of Houston*, 161 F.3d 834, 836-37 (5th Cir. 1998)). Qualified immunity

protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v.

Briggs*, 475 U.S. 335, 341 (1986).

"The Due Process Clause . . . protects a pretrial detainee from excessive force that amounts

to punishment." *Vanderburg v. Harrison Cnty. ex rel. Bd. of Supers.*, 716 F. Supp. 2d 482, 486

(S.D. Miss. 2010). "The standard for analyzing an excessive force claim under the Fourteenth

---

[4] In any event, an official-capacity claim against Officer Johns would fail because Wilson has not established that PRCJ "had a policy, custom, or practice that was the 'moving force' behind the alleged excessive force." *See Johnson v. Sharpe*, No. 1:13-cv-00499-MTP, 2014 WL 1050293, at *3 (S.D. Miss. Mar. 14, 2014) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Wilson's claims against Officer Johns in his official capacity, if any, would be dismissed with prejudice. *See id.*

Amendment is the same as the Eighth Amendment standard." *Id*. In excessive-force cases brought

under the Eighth Amendment, the relevant inquiry is "whether force was applied in a good-faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v.*

*McMillian*, 503 U.S. 1, 7 (1992) (quotation omitted). "To determine whether the use of force was

constitutionally excessive" under the Eighth Amendment, the Court will evaluate the five factors

identified in *Hudson*: "(1) the extent of the injury suffered by an inmate, (2) the need for application

of force, (3) the relationship between that need and the amount of force used, (4) the threat

reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity

of a forceful response." *Comeaux v. Sutton*, 496 F. App'x 368, 370 (5th Cir. 2012) (quotations and

alterations omitted).

When Officer Johns first struck and subdued him in the common room, Wilson had just

initiated two physical conflicts with other inmates in the span of five minutes. These fights

occurred in the presence of many other inmates, some of whom had approached the scuffles or

were tangentially involved, creating the possibility of an institutional security threat.  Officer Johns

first "told [Wilson] to stop fighting." (Tr. 33). When that command went unheeded, Officer Johns

intervened by striking Wilson once and subduing him long enough for his colleagues to clear the

area of other inmates. Once officers had obtained control of the room, Wilson rose from his prone

position and walked into the hallway without assistance.[5] Though Wilson suffered minimal

bleeding from a scratch on the back of his head, [49-2] at 7, the remaining *Hudson* factors show

that Officer Johns' first use of force was not constitutionally excessive. *See Christof v. Stout*, No.

---

[5] Though Wilson claims that his head was "busted open . . . so badly that [he] needed stitches," [1] at 5, the video evidence demonstrates otherwise. When a "videotape quite clearly contradicts the version of the story told by" one party, "a court should not adopt that [person's] version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 378-80 (2007).

19-389-JWD-SDJ, 2020 WL 12048993, at *3 (M.D. La. July 17, 2020), *report and recommendation adopted by* 2020 WL 12048994, at *1 (M.D. La. Aug. 18, 2020) (awarding qualified immunity to prison officials who deployed a chemical agent to restore discipline after cellmates began fighting and ignored verbal commands to stop). Officer Johns is qualifiedly immune from Wilson's excessive-force claim arising inside the common room.

But genuine factual disputes exist about whether Officer Johns used excessive force against Wilson in the hallway. The law is clearly established that "once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive." *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015). Based on Wilson's testimony at the Omnibus Hearing, which must be credited at this stage of the proceedings (*see Clark v. Massengill*, 641 F. App'x 418, 421 (5th Cir. 2016)), along with the video evidence, Officer Johns struck a handcuffed inmate twice—and once with a closed fist. Though Wilson had turned to face Officer Johns in the hallway, a reasonable factfinder could conclude that Wilson was no longer a security threat at this point; he was already restrained, had been removed from the common room, and was guarded by at least two PRCJ employees. In other words, Officer Johns' use of force in the hallway was not done "to maintain or restore discipline." *See Hudson*, 503 U.S. at 7.

Officer Johns' arguments on this point underscore the existence of genuine factual disputes. He says that, once in the hallway, Wilson "[took] steps back toward the Zone doorway." Mem. [50] at 26. The video could just as easily depict an irate Wilson turning to speak to Officer Johns, who was escorting him from behind. It is also unclear from the video whether "Wilson was trying to spit on [Officer Johns]." *See id.* Nor does the video clearly illustrate a pattern of noncompliance, as characterized by Officer Johns. *See id.* at 27. Thus, Officer Johns is not entitled to qualified

11

immunity from Wilson's excessive-force claim arising in the hallway. *See Skinner v. Gautreaux*, 593 F. Supp. 3d 383, 396 (M.D. La. 2022) (finding the plaintiff stated a claim for excessive force against a prison guard "for his injuries sustained during the period after which he was restrained when [the guard] continued to use force"); *Quintanilla v. Araiza*, No. SA-20-CV-00927-XR, 2021 WL 2019204, at *6-7 (W.D. Tex. May 20, 2021) (finding the plaintiff stated a claim for excessive force against prison guards who handcuffed and punched him, despite there being "no existing security issue at the time of the assaults").

## IV.   CONCLUSION

Having thoroughly reviewed and liberally construed Wilson's pleadings and testimony, along with the Motions [47] [49] presently pending, the Court finds that Wilson's claims against all Defendants should be dismissed without prejudice based on his failure to fully exhaust his administrative remedies before filing this lawsuit. One of Wilson's two excessive-force claims against Officer Johns should be dismissed with prejudice because he is entitled to qualified immunity as outlined above.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Sheriff David Allison's Motion [47] for Summary Judgment for Failure to Exhaust Administrative Remedies is **GRANTED**. Plaintiff Jermaine Levell Wilson's claims against Sheriff Allison are **DISMISSED WITHOUT PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Officer Patrick Johns' Motion [49] for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims against Officer Johns are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies. And his first excessive-force claim against Officer Johns (the one arising

in the common room) is **DISMISSED WITH PREJUDICE** because Officer Johns is entitled to

qualified immunity on this claim.

   **IT IS, FURTHER, ORDERED AND ADJUDGED** that this case is closed. A separate

Final Judgment will be entered under Federal Rule of Civil Procedure 58.

   **SO ORDERED AND ADJUDGED,** this 6th day of November, 2023.

        /s/ *Robert P. Myers, Jr.*

        ROBERT P. MYERS, JR.
        UNITED STATES MAGISTRATE JUDGE